## GULF BAG CO. v. SUTTNER et al.

### (Circuit Court, N. D. California. July 27, 1903.)

### No. 13,412.

1. STRIKES—INJUNCTION—INTIMIDATION.
    Where, in a suit to restrain certain strikers from intimidating plaintiff's employés, it appeared from the affidavits that defendants and others assembled about complainant's factory and applied to complainant's employés vile epithets and other unseemly language, threatened, and in a few instances made actual personal assaults on, such employés, in order to prevent their continuance at work, while defendants' denials consisted merely of denials of the acts of violence, but did not deny defendants' presence when such acts were committed, a preliminary injunction issued should be continued until the case could be heard on its merits.

H. B. Montague and Houghton & Houghton, for complainant.
H. W. Hutton and Bert Schlesinger, for defendants.

BEATTY, District Judge. The complainant alleges the existence of the San Francisco Labor Council of Federated Trades, of which defendants Benham and Zant are respectively president and secretary; that its objects are to compel the employers of labor to employ only union laborers; that the Cotton Bag Workers' Union, No. 10,648, is a union association of which defendants Hanback and Tiedemann are respectively president and secretary, and some of whose members worked for complainant, and quit complainant's service on June 8, 1903; that all of defendants have conspired and combined to injure complainant's business, unless it shall employ only the members of such union; that on and after the 8th day of June, 1903, defendants assembled in large numbers about complainant's premises, and by unlawful threats, intimidations, and other unlawful means so intimidated complainant's employés as to prevent them from working. There are numerous affidavits attached to the complaint showing various unlawful acts by defendants, consisting of the application to complainant's employés of vile epithets and language, of threats against them, and in a few instances of actual personal assaults. Upon such showing a restraining order was issued, and the question now is whether it shall be continued until the case can be heard upon its merits.

By their affidavits the defendants specifically deny every unlawful act, the use of every threat, of every vile epithet or language charged to have been done or used by them, and they allege, as is the rule in such cases, "that the principal object of their union is, by mutual arrangements with the employers of its members, to secure satisfactory rates of wages, and to improve the efficiency of its members, and that it does not approve or tolerate violence for any purpose." There is no doubt that all the written stated objects in their records of or-

.ganization are worthy and commendable, but the question is not as to the objects of their organization, stated or otherwise; it is what they do. While, as stated, defendants deny the commission of any unlawful acts, there are many admissions of their presence about complainant's premises about the times charged; but they say they were there only for the purpose of peaceably persuading others not to work for, and to quit the service of, complainant—there is one admission of the use of epithets, but not by any of the defendants. Ida Banchero says:

"It is true that some people in the vicinity called some of the employés of the Gulf Bag Company, they having about eight at work during the week above mentioned, 'scabs,' but it is untrue that any of the defendants herein ever called any one 'scab.' We have called the Gulf Bag Company 'scab,' which is a fact, but we or either of us have not told any of the present employés of the Gulf Bag Company that they would be done up, or that we would have it in for them. All that was done in our behalf was to use peaceable persuasion, and tell said people and request others not to take our places," etc.

There is no doubt that some of the defendants were there, and it is charged that at times the numbers were great.

The law does give the right of peaceable persuasion. It is the abuse of this right which leads to all the trouble. In their desire to succeed they too often go in great numbers. Among them are generally some who are lawless and reckless of rights or consequences. They do that which the conservative and better classes do not approve of, and the general result is that the conscious power of great numbers leads along from one act to another, to the usual end that violence and abuse are resorted to when advice and persuasion fail. But it must be understood that when any assemble in numbers for some object they must be held responsible for what their associates do, whether they approve of or advise it or not.

We have, then, upon one side the specific charge of lawlessness; upon the other, the specific denial thereof. It seems improbable that complainant would make the showing that it has, without any substantial facts as a basis. On the contrary, it is seldom that any defendants or others admit the error of their ways. There are, however, established facts corroborating the showing made by complainant. It is not in doubt that disagreement existed between complainant and its employés, and that the latter quit work; that some of such employés and some of their friends, after the strike, collected in the vicinity of complainant's works, and at least interviewed other employés, and that this occurred during several successive days; that one man at least—Jensen—was violently assaulted with a bludgeon and knocked down in that vicinity by somebody; that there is fair evidence of other assaults, there and at other places, upon the employés who continued to work; that it had grown so dangerous that the police officers found their presence necessary to preserve the peace. Objection was made to the use of a certified copy of a police officer's official report to his chief. It bears upon the issues, and bears the evidence of truth. The truth is what we want, and it will not be excluded for merely technical reasons, but it may be added that the result reached does not at all depend upon this report.

One individual case may be referred to. It is charged that defendant Suttner was especially vile in his conduct and in his use of language toward a female operative, Agnes Fallon. He denies it all, and that he was present at the time charged, but her statements are so confirmed by others that I prefer believing them to his denials.

Fortunately, in this case, no extremely serious results, such as we are growing somewhat accustomed to, followed. It may have been the interposition of the timely restraining order, but of the fact that unlawful acts were done the whole record of the case is convincing. It was an effort on the part of defendants to force higher wages for their associates by unlawful interference with the rights of others to labor who were not associated with them. All laboring people fully understand that whenever they please, and for any cause, they have the right to quit work, whether as individuals or as organizations. They must also understand that all men, whether associated with them or not, have equal rights with them in the laboring world. The right to labor, or to cease it, must be as free to all as it is to water to seek its level. This government is one of liberty under the law, and its people are free men; neither will tolerate the attempt of any to enforce assumed rights by crushing the inalienable rights of others. Until all recognize and obey that law the contest must and will go on.

I think, in the interest of peace and law, this restraining order should be continued. It is complained that it is too comprehensive in that it includes the members of both associations hereinbefore named. There is no question that the Cotton Bag Workers' Union is interested, for the striking employés of complainant were members thereof, and defendant Hanback, who is president of this union, says in his affidavit that the president and secretary of the other associations interceded in this matter to procure better wages for these employés. As these organizations work largely through their officers, it is not extravagant to conclude that both organizations took more or less interest in this contest.

Moreover, this restraining order does not deprive any one of any right, nor require of him any wrong. It only requires that no wrong shall be committed, that no right shall be infringed. The order can do no harm, even if not clearly and absolutely justified, but I think the facts justify it, and, as it was made, so it is continued.